UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

NORTHFIELD INSURANCE COMPANY

   v.          C.A. No. 11-013-ML

KELVIN SANDERS

   v.

TROY, PIRES & ALLEN and
VRANIA COELHO

**MEMORANDUM AND ORDER**

  This insurance coverage dispute was brought by Northfield Insurance Company ("Northfield") as a declaratory action against its insured Kelvin Sanders ("Sanders"). Northfield sought a declaration that Sander's claim related to loss of a residential building in a fire was not covered (or excluded from coverage) under a commercial general liability policy (the "Policy") Northfield had issued to Sanders. Sanders responded with a counterclaim against Northfield and a third-party claim of negligence against (1) Troy, Pires & Allen ("TPA"), the local insurance agency through which Sanders obtained the Policy, and (2) Vrania Coelho ("Coelho"), one of TPA's employees. At some point in the litigation, Northfield and Sanders settled their claims against each other with a stipulation that expressly preserved Sanders' claims against TPA and Coelho.

1

The matter before the Court is TPA and Coelho's motion for summary judgment. For the reasons that follow, that motion is granted.

## I.   Factual Background and Procedural History[1]

On August 6, 2008, Sanders bought a residential property at 323-325 Dexter Street in Providence (the "Property"), which Sanders planned to renovate and rent to tenants. On June 24, 2009, Shay DiPina ("DiPina"), an employee of Sanders, contacted Coelho to obtain insurance coverage for the Property. In filling out an application for insurance (the "Application"), DiPina provided certain information regarding the Property to Coelho. There appears to be some dispute whether it was Sanders or DiPina who provided such information. However, because the claims between Northfield and Sanders were subsequently settled and dismissed, that information is not critical to the analysis. TPA accepted the Application,[2] which stated, *inter alia*, that Sanders had owned the Property for only a month and that only one of the Property's three units was vacant. Based on that information, TPA obtained a quote for insurance coverage for the Property from Northfield, its

---

[1] The summary of facts is based on the parties' respective statements of undisputed facts ("SUF") and additional submitted materials. The Court notes that, as neither party has filed a statement of <u>disputed</u> facts, pursuant to  local rule LR Civ 56 (a)(3)-(5), any facts alleged in the SUFs are deemed admitted.

[2] Although the Application appears to have Sanders' signature, Sanders asserts that the application was filled out by DiPina.

primary carrier for residential rental property.

On July 24, 2009, Northfield issued the Policy with Sanders as the named insured for a premium of $1,617. According to Sanders, "Coelho was fully aware that the Property was vacant, and that none of the units were occupied, yet bound the incorrect insurance coverage for Sanders, to wit, a commercial general liability policy rather than a builder's risk insurance policy." Obj. at 11 (Dkt. No. 75-1). Following issuance of the Policy, Northfield commissioned a risk assessment of the Property from Alexander & Schmidt. The resulting report, dated August 18, 2009, indicated that the Property was being renovated and that it was vacant. According to TPA, it did not receive a copy of the report.

On March 19, 2010, a fire caused extensive damage to the Property. At the time of the fire, the Property was vacant and was undergoing renovations. Although the Policy provided coverage for an occupied dwelling only, Section 6 therein provided that "[b]uildings under construction or renovation are not considered vacant." On January 18, 2011, Northfield filed a declaratory action seeking a declaration that the damage from the March 19, 2010 fire was not a covered loss because the Property was vacant at that time. Northfield also sought to have the Policy rescinded on the basis of material misrepresentations in the Application.

In his March 15, 2011 answer, Sanders included a counterclaim against Northfield for coverage under the Policy based on breach of

contract and vicarious liability. With respect to the latter, Sanders averred that "Troy Pires is an authorized agent of Northfield." Sanders' Answer/Counterclaim at ¶ 34 (Dkt. No. 5). In addition, Sanders asserted a negligence claim against TPA and Coelho. Specifically, Sanders alleged that TPA and Coelho failed "to possess and exercise the degree of care, skill, training and knowledge normally possessed and exercised by a reasonably prudent insurance broker in like circumstances" resulting in serious financial losses to Sanders. Id. at ¶¶ 29-32.

The parties then engaged in discovery. On October 31, 2012, Northfield and Sanders entered a joint stipulation dismissing all claims against each other. Dismissal Stipulation (Dkt. No. 53-1). The dismissal stipulation specified that it "shall have no effect and/or application whatsoever with regard to [Sanders' claims against TPA and Coelho], and each of them, which said claims are specifically and expressly excluded herefrom." Id.  Accordingly, Sanders, TPA, and Coelho continued with discovery.

On July 23, 2013, TPA and Coelho filed a motion for summary judgment, arguing that (1) as agents of a disclosed principal (Northfield), they were not liable for acts performed within the scope of their duty; (2) dismissal of all claims against Northfield released its agents as well; and (3) no determination was ever made that Sanders' claim was not covered under the Policy.

On August 26, 2013, Sanders filed an objection to the motion

for summary judgment, in which he suggested, notwithstanding his earlier assertion in the Complaint, that "there is no evidence to suggest that TPA was an agent of Northfield." Obj. at 7 (Dkt. No. 75-1). Sanders also took the position that TPA was, in fact, Sanders' agent and that TPA's alleged negligence was "sufficient to establish a colorable claim as against TPA regardless of the disposition of the so-called Northfield Insurance Company/Sanders coverage dispute." Id. at 10.[3]  TPA and Coelho filed a reply in response to Sanders' objection on September 20, 2013.

On October 17, 2013, the Court held a hearing on TPA/Coelho's motion for summary judgment, at the conclusion of which the Court took the motion under advisement. The matter is now ready for a determination.

## II. Standard of Review

To prevail on a motion for summary judgment, the moving party must establish "that there is no genuine dispute as to any material fact" and that it "is entitled to judgment as a matter of law." OneBeacon America Ins. Co. v. Commercial Union Assur. Co. of

---

[3]

In his objection, Sanders correctly pointed out that TPA/Coelho had failed to submit a separate SUF as required by Local Rule LR Cv 56. Accordingly, on September 6, 2013, the Court issued an order directing TPA/Coelho to file an SUF on or before September 16, 2013 and Sanders to file a statement of disputed facts ("SDF") on or before September 23, 2013. TPA/Coelho complied with the Court's order; neither side elected to file an SDF, leaving their respective statements essentially undisputed. See Local Rule LR Cv 56.

<u>Colorado</u>, 684 F.3d 237, 241 (1st Cir. 2012); Fed.R.Civ.P. 56(a); see <u>Baltodano v. Merck, Sharp, and Dohme (I.A.) Corp</u>., 637 F.3d 38, 41 (1st Cir.2011). "A fact is material if it carries with it the potential to affect the outcome of the suit under applicable law." <u>Santiago-Ramos v. Centennial P.R. Wireless Corp.</u>, 217 F.3d 46, 52 (1st Cir.2000) (internal quotation marks omitted). On issues where the movant does not have the burden of proof at trial, the movant can succeed on summary judgment by showing "that there is an absence of evidence to support the nonmoving party's case." <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

It is well established, however, that "'a conglomeration of conclusory allegations, improbable inferences, and unsupported speculation is insufficient to discharge the nonmovant's burden.'" <u>Sanchez-Rodriguez v. AT&T Mobility Puerto Rico, Inc.</u>, 673 F.3d 1,9 (1st Cir. 2012)(quoting <u>DePoutot v. Raffaelly</u>, 424 F.3d 112, 117 (1st Cir.2005))) (internal quotation marks omitted). Instead, "'the party seeking to avoid summary judgment 'must be able to point to specific, competent evidence to support his claim.'" <u>Id.</u> (quoting <u>Soto-Ocasio v. Fed. Exp. Corp.</u>, 150 F.3d 14, 18 (1st Cir.1998)(internal quotation marks omitted)).

**III. Discussion**

A. Liability of Agent of Disclosed Principal

"It has long been settled that an agent acting on behalf of a

disclosed principal is not personally liable to a third party for acts performed within the scope of his authority." Kennett v. Marquis, 798 A.2d 416, 418-419 (R.I. 2002)(quoting Cardente v. Maggiacomo Insurance Agency, Inc., 108 R.I. 71, 73, 272 A.2d 155, 156 (1971)); see also UST Corp. v. General Road Trucking Corp., 783 A.2d 931 (R.I. 2001). "[A]n agent is not ordinarily liable for his principal's breach of contract." McCarthy v. Azure, 22 F.3d 351, 360-361, (1st Cir. 1994) (citing Mastropieri v. Solmar Constr. Co., 159 A.D.2d 698, 553 N.Y.S.2d 187, 188 (1990)). "It is well settled that when an agent acts on behalf of a disclosed principal, the agent will not be personally liable for a breach of the contract, unless there is clear and explicit evidence of the agent's intention to be bound." Mastropieri v. Solmar Constr. Co., 159 A.D.2d at 699; see also Restatement (Second) of Agency § 328 (1958) ("An agent, by making a contract only on behalf of a competent disclosed or partially disclosed principal whom he has power so to bind, does not thereby become liable for its nonperformance."); Kenney Mfg. Co. v. Starkweather & Shepley, Inc., 643 A.2d 203, 209 (R.I.1994)("Stated another way, a disclosed principal is liable to a third party for the authorized acts of its agent.").

However, an agent may be held personally liable (1) for unauthorized acts outside the scope of the agency, Kenney Manufacturing Co. v. Starkweather & Shepley, Inc., 643 A.2d at 209;(2) for acts to which the agent has bound himself or herself -

7

either expressly or impliedly - under a contract, C.C. Plumb Mixes, Inc. v. Stone, 108 R.I. 75, 76-77, 272 A.2d 152, 154 (1971), and/or (3) for acts within the scope of a duty that is otherwise independent of the agency relationship, Forte Brothers, Inc. v. National Amusements, Inc., 525 A.2d 1301, 1303 (R.I.1987); see also, Stebbins v. Wells, 818 A.2d 711, 719 (R.I.2003).

B.   Agency in the Insurance Context

In Etheridge v. Atlantic Mut. Ins. Co., 480 A.2d 1341 (R.I. 1984), which both parties have cited in support of their respective positions, the Rhode Island Supreme Court states as follows:

> "We have generally regarded the question of agency as an issue of fact to be submitted to the trier of fact under appropriate applicable legal principles. See Brimbau v. Ausdale Equipment Rental Corp., R.I., 440 A.2d 1292, 1295-96 (1982). In that case we recognized that a person might simultaneously represent two independent principals. Id., 440 A.2d at 1296. Consequently, the question of agency is a mixed question of law and fact. See DeNardo v. Fairmount Foundries Cranston, Inc., 121 R.I. 440, 445-49, 399 A.2d 1229, 1232-34 (1979). This court has held that an insurance agent who represented several insurance companies and had freedom of choice in determining with which company he would place an automobile fire-insurance-policy was the agent of the insured and not of the insurer. Affleck v. Kean, 50 R.I. 405, 407, 148 A. 324, 325 (1929). This holding was in accordance with the general principle:
>
> 'If an agent representing several companies is applied to for insurance to a certain amount on property, the agent to select the companies and distribute the risk, he is insured's agent as to distributing the risk.' 3 Couch, Cyclopedia of Insurance Law § 25.111 at 424 (2d ed. 1960)."

8

The Court in Etheridge noted, however, that, "[o]nce [the agent] decided to issue a policy, he was, of course, [the insurer's] authorized agent in issuing the policy for the amount stated, but not in the initial determination of fixing that amount. Etheridge v. Atlantic Mut. Ins. Co., 480 A.2d at 1346 (emphasis added).

In this case, it is undisputed that Sanders (or someone on his behalf)[4] submitted the Application for insurance coverage with TPA. The Policy in question was issued by Northfield for the benefit of Sanders, a fact of which Sanders was well aware. Nothing in the record suggests that TPA and/or Coelho acted outside their scope of agency, that they bound themselves to a contract with Sanders, or that they assumed a duty independent of their agency for Northfield.

Paul Revere Life Ins. Co. v. Fish, 910 F. Supp. 58 (D.R.I.1996), on which Sanders relies, does not require a different result. In Fish, the insurer sought to rescind a disability insurance policy based on material misrepresentation in the application. The insurance broker who assisted the insured in

---

[4] Although Sanders repeatedly points out that it was DiPina who filled out the Application form - and, presumably, was responsible for the misrepresentations therein - he concedes that DiPina was his employee and he sought coverage under the Policy that was issued in reliance on the Application. As such, the question of who filled out the Application is not material to a determination of the motion for summary judgment.

preparing the application was a long-time acquaintance of the insured, id. at 60, and had previously sold insurance from various other disability insurance carriers to the insured. Id. at 62. According to the insured, the broker presented him with a blank form which the insured signed, to be filled in by the broker later. According to the broker, he filled out the application based on the answers provided by the insured. Based on those circumstance, the Court held that a genuine issue existed as to the broker's agency and his knowledge at the time of application. Id. at 64.

In this case, there is no contention that Sanders had a prior relationship with TPA or that he had ever purchased insurance coverage from TPA in the past; nor is there any indication that TPA's involvement went beyond accepting the completed Application from DiPina and soliciting insurance coverage for the Property. As Sanders' counsel acknowledged at the October 17, 2013 hearing, Sanders knew that he was dealing with TPA in order to obtain insurance coverage and that the Policy was issued by Northfield. In other words, Sanders was aware that TPA, as an insurance broker, secured the Policy for him from Northfield. Nothing in the record suggests that the relationship between Sanders and TPA was that of principal and agent.

In essence, Sanders' claim against TPA is based on the contention that TPA was not Northfield's, but Sanders' agent and, as such, TPA secured the wrong insurance coverage (based on

DiPina's erroneous representations). Although Northfield apparently failed to adjust the Policy when it received correct information regarding the Property from Alexander & Schmidt (which was not provided to TPA) three weeks after issuing the Policy, Sanders suggests that TPA should be held liable for a loss that may or may not have been covered under the Policy. Sanders' claim is not supportable under any legal theory.

Moreover, as TPA and Coelho have correctly pointed out, Sanders' vicarious liability claim against Northfield was based on his assertion that "[TPA] is an authorized agent of Northfield." Because Sanders has dismissed all claims against Northfield, there will be no determination whether the Policy did or did not cover Sanders' loss and, relatedly, whether the alleged negligence committed by TPA and/or Coelho resulted in any damages. In other words, Sanders' claim against TPA and Coelho requires him to establish that, as a result of TPA's and/or Coelho's negligence, the Policy did not cover his loss. However, by dismissing his case against Northfield[5], Sanders simply has no further claims under the Policy and whether he was or was not covered thereunder is no longer an issue in this case.

In sum, the undisputed facts of this case establish that TPA

---

[5]

As Sanders' counsel candidly conceded at the October 17, 2013 hearing, Sanders settled his claims against Northfield by dismissing all claims without consideration.

and Coelho acted as agents of a disclosed principal, Northfield. Northfield was subsequently released from all claims by Sanders. Under those circumstances, Sanders' bald assertions that TPA was not, in fact, Northfield's agent, and that TPA had a special duty to ensure Northfield issued the correct policy to Sanders cannot withstand TPA/Coelho's motion for summary judgment.

## Conclusion

For the reasons stated herein, the motion for summary judgment by Troy, Pires & Allan, LLC and Vrania Coelho is GRANTED.


SO ORDERED.

/s/ Mary M. Lisi

Mary M. Lisi
Chief United States District Judge

November 19, 2013

12